No. 25-6268

# In the United States Court of Appeals for the Ninth Circuit

STATE OF OREGON, *et al.*,
PLAINTIFFS-APPELLEES,

*v.*

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,
DEFENDANTS-APPELLANTS.

ON APPEAL FROM THE U.S. DISTRICT COURT FOR THE DISTRICT OF OREGON

**BRIEF OF AMERICA FIRST LEGAL FOUNDATION AS *AMICUS CURIAE* IN SUPPORT OF DONALD J. TRUMP, ET AL., DEFENDANTS-APPELLANTS**

R. Trent McCotter
Nicholas A. Cordova
Boyden Gray PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
202.706.5488
tmccotter@boydengray.com

Gene Hamilton
America First Legal
Foundation
611 Pennsylvania Ave. SE #231
Washington, DC 20003

Counsel for *Amicus Curiae*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amicus Curiae* states that it has no parent companies, and no publicly-held company has a 10% or greater ownership interest in it.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................................iii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ..............................1

SUMMARY OF ARGUMENT ................................................................2

ARGUMENT ........................................................................................2

I.  A Stay Pending Appeal Is Warranted ................................................2

    A. The Federal Government Is Likely to Succeed on the Merits....3

        i.   Oregon's *"Ultra Vires"* Claim Is Improper........................3

        ii.  The President Acted Properly Under 10 U.S.C. § 12406 ......8

        iii. Oregon's Tenth Amendment Claim Fails...........................11

    B. The Federal Government Will Suffer Irreparable Harm Absent a Stay................................................................................12

    C. The Balance of Equities and Public Interest Favor a Stay ......14

II. The District Court Lacked Jurisdiction to Issue a Second TRO .......15

CONCLUSION .....................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Foreign Serv. Ass'n v. Trump*,
No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025) ................. 3

*Arizona Dream Act Coal. v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) ........................................................... 15

*Boire v. Greyhound Corp.*,
376 U.S. 473 (1964) ............................................................................. 5

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) ............................................................. 16

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ............................................................. 14

*Griffith v. Fed. Lab. Rels. Auth.*,
842 F.2d 487 (D.C. Cir. 1988) ............................................................. 5

*Leedom v. Kyne*,
358 U.S. 184 (1958) ............................................................................. 4

*Estate of Magnin v. CIR*,
184 F.3d 1074 (9th Cir. 1999) ............................................................. 7

*Martin v. Mott*,
25 U.S. (12 Wheat.) 19 (1827) ............................................................. 7

*Newsom v. Trump*,
141 F.4th 1032 (9th Cir. 2025) ................................ 6, 7, 8, 12, 13, 15

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................. 2

*NRC v. Texas*,
605 U.S. 665 (2025) ................................................................ 3, 4, 6, 7

*Railway Clerks v. Association for Benefit of Non-Contract
Employees*,
380 U.S. 650 (1965) ............................................................................. 4

*Sterling v. Constantin*,
287 U.S. 378 (1932) ............................................................................. 7

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008)..................................................................15

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952)............................................................15

**Constitution & Statutes**

U.S. Const. art. I, § 8, cl. 15 .................................................12

10 U.S.C. § 12406 ........................................... 2, 3, 4, 5, 6, 7, 8

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution and federal statutes. As part of *Amicus*'s commitment to the rule of law, it seeks to ensure that the President is not unlawfully prevented from exercising his authority to carry out federal law.

---

[1] No person other than *amicus curiae* and their counsel assisted with or made a monetary contribution for preparing or submitting this brief. *Amicus* has sought leave to file this brief.

## SUMMARY OF THE ARGUMENT

This Court should grant a stay pending appeal because the Federal Government is likely to succeed on the merits and the other factors favor a stay. The Federal Government's appeal will likely succeed because (1) the Plaintiffs' ("Oregon's") "*ultra vires*" claim is improper; (2) the applicable statute, 10 U.S.C. § 12406, authorizes the President's determination even if the district court could review the claim; and (3) the President's actions do not offend the Tenth Amendment.

Further, once the matter is before this Court, it should also vacate the second TRO that the district court entered. The Federal Government's October 4 notice of appeal of the first TRO divested the district court of jurisdiction to enter a second one.

## ARGUMENT

### I.    A Stay Pending Appeal Is Warranted

The Federal Government is entitled to a stay because it has shown that (1) it "is likely to succeed on the merits" of its appeal, (2) it "will be irreparably injured absent a stay," (3) a stay will not "substantially injure" other interested parties, and (4) a stay is in the "public interest." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

2

### A. The Federal Government Is Likely to Succeed on the Merits

#### i. Oregon's *"Ultra Vires"* Claim Is Improper

The Federal Government is likely to succeed on appeal because there is no "*ultra vires*" cause of action to review Presidential determinations made under 10 U.S.C. § 12406.

At the threshold, "the President is not an agency," "[s]o it is unclear whether *ultra vires* review is available at all." *Am. Foreign Serv. Ass'n v. Trump*, No. 25-5184, 2025 WL 1742853, at *2 (D.C. Cir. June 20, 2025). That is because "an *ultra vires* action is a suit in equity, and courts generally lack authority to enjoin the President." *Id.* (citing authorities). "To be sure, the Supreme Court has assumed without deciding that some *ultra vires* claims may lie against presidential action. But it has held that 'such review is not available when the statute in question commits the decision to the discretion of the President.'" *Id.* There is no doubt that the relevant statute here does so.

In any event, the Supreme Court has "strictly limited nonstatutory ultra vires review," emphasizing last term that "it applies only" when the defendant "has taken action entirely 'in excess of [his] delegated powers and contrary to a *specific prohibition*' in a statute." *NRC v. Texas*, 605

3

U.S. 665, 681 (2025) (citing *Railway Clerks v. Association for Benefit of Non-Contract Employees*, 380 U.S. 650, 660 (1965)) (emphasis original). *Ultra vires* review emphatically "does not apply simply because [the defendant] has arguably reached 'a conclusion which does not comport with the law.'" *Id.* (quoting *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964)). If "a decision" is of the sort that is "within [the decisionmaker's] jurisdiction," *ultra vires* review is unavailable. *Railway Clerks*, 380 U.S. at 659 (describing *Leedom v. Kyne*, 358 U.S. 184 (1958)).

*Ultra vires* review is unavailable here because (1) there are no "specific prohibition[s]" in 10 U.S.C. § 12406, *NRC*, 605 U.S. at 681, (2) the President's decision to federalize the Oregon National Guard is exactly the type of decision that the statute contemplates, and (3) Oregon is improperly attempting to "dress up a typical statutory-authority argument as an *ultra vires* claim," *id.* at 666.

Section 12406 speaks only in the affirmative. It provides that "the President may call into Federal service members and units of the National Guard of any State in such numbers as he considers necessary" "[w]henever" any of three conditions is present. 10 U.S.C. § 12406. No one disputes that this provision gives the President power to federalize the

4

National Guard under certain conditions, so federalization cannot be entirely in excess of the powers the statute confers or beyond the President's jurisdiction, even if none of the requisite conditions is present. Thus, courts cannot conduct *ultra vires* review of the President's invocation of 10 U.S.C. § 12406 to federalize the national guard.

The district court nonetheless enjoined the President based on nothing more than its own conclusion that the President made "an erroneous assessment of the particular facts before [him]" that "has led [him] to a conclusion which does not comport with the law." *Boire*, 376 U.S. at 481 (explaining that even those sorts of holdings do not justify *ultra vires* review); *see Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988) ("We have said that [*ultra vires*] review may be had only … when the agency has disregarded a specific and unambiguous statutory directive," or "violated some specific command of a statute") (internal quotation marks and citations omitted).

The district court supported its exercise of jurisdiction with quotations from pre-*NRC* caselaw stating that "[*u*]*ltra vires* actions allow courts to adjudicate 'constitutional challenges to presidential acts' and 'actions by subordinate Executive Branch officials that extend beyond

delegated statutory authority.'" Dist. Ct. Op. at 3 n.1 (quoting *Murphy Co. v. Biden*, 65 F.4th 1122, 1128–29 (9th Cir. 2023)). That proposition does not survive *NRC*, and especially not here, where the only purported constitutional claim is under the Tenth Amendment. *See* Dist. Ct. Op. at 3.

If Oregon can get *ultra vires* review simply by alleging that the President's action infringed its sovereignty and police powers by exceeding statutory authority, then *every* state has an *ultra vires* action against *every* federal government action that has consequences within a state's borders, including the licensing decision at issue in *NRC*. Of course, the Supreme Court held that is not correct. Here, Oregon's attempt to "dress up a typical statutory-authority argument as an ultra vires claim" is insufficient and should be rejected, *NRC*, 605 U.S. at 666, lest a "narrow" exception become a superhighway to judicial review.

The district court relied on this Court's decision in *Newsom v. Trump*, 141 F.4th 1032 (9th Cir. 2025), but that opinion did not address this particular issue. Rather, the Court held that the Political Question Doctrine did not bar review of a Presidential determination under 10 U.S.C. § 12406 for "good faith." *Id.* at 1044. The Court assumed without

6

discussion that an *ultra vires* cause of action was available, *see id.* at 1044–45, and such an assumption on that point does not bind this panel, *see Estate of Magnin v. CIR*, 184 F.3d 1074, 1077 (9th Cir. 1999) ("When a case assumes a point without discussion, the case does not bind future panels."). Additionally, the *Newsom* panel published its decision one day after the Supreme Court decided *NRC*, so the panel presumably could not have assessed *NRC*'s effect on the *ultra vires* question.

Further still, the *Newsom* decision was wrong on the question it did address, i.e., whether the political nature of a Presidential determination under 10 U.S.C. § 12406 makes such determinations nonjusticiable. In holding that courts can review these determinations for "good faith," the panel relied on an out-of-context quote from *Sterling v. Constantin*, 287 U.S. 378 (1932), a case addressing powers of the Governor of Texas, not the President and Congress relative to federal courts. 141 F.4th at 1050–51. *Sterling* does not modify the Supreme Court's holding in *Martin v. Mott* that, once Congress has authorized the President to call forth the militia when certain exigencies are present, "the authority to decide whether the exigency has arisen, belongs exclusively to the President, and that his decision is conclusive upon all other persons." 25 U.S. (12

7

Wheat.) 19, 30 (1827). Even so, as discussed below, the President's determination here easily passes the "highly deferential" review that *Newsom* calls for. 141 F.4th at 1040.

### ii. The President Acted Properly Under 10 U.S.C. § 12406

Even if the district court could consider an *ultra vires* claim here, the court failed to exercise "highly deferential" review of the President's determination under 10 U.S.C. § 12406. *Newsom*, 141 F.4th at 1040.

The President relied on the sub-provisions authorizing him to federalize the National Guard when "(2) there is a rebellion or danger of a rebellion against the authority of the Government of the United States; or (3) the President is unable with the regular forces to execute the laws of the United States." 10 U.S.C. § 12406. Under *Newsom*, judicial "review of the President's determinations in this context is especially deferential," and there is a "presumption" that the President's determination is "in pursuance of law" unless and "until the contrary is shown." *Newsom*, 141 F.4th at 1047.

The district court was wrong to reject the President's determination that there is "a rebellion or danger of a rebellion against the authority of the Government" warranting federalization of the Oregon National

8

Guard. *See* Dist. Ct. Op. at 23–26. The district court applied a four-part test for what constitutes a "rebellion"—a test that has no grounding in the statute's text—to reject dictionary definitions of "rebellion" that favor the Federal Government. *Id.* at 23–24 (citing *Newsom v. Trump*, 786 F. Supp. 3d 1235, 1251, 1253 (N.D. Cal. 2025), *stayed sub. nom.*, 141 F.4th 1032 (9th Cir. 2025)). The district court further refused to let the President rely on events outside the few "days leading up to the federalization" or outside Oregon, although nothing in the statute suggests this limitation, and logic and history confirm that these sorts of uprisings tend to spread quickly from one location to another. *Id.* at 25, 19. This is not deferential review—it is crabbed at every step.

Had the district court exercised deferential review, it would have placed the President's determination in the context of a summer of widespread deliberate interference with ICE's enforcement of federal law. And it would have differently weighed its acknowledgements that "[t]he ICE facility in Portland shut down from June 13, 2025, until July 7, 2025, due to the property damage from protesters," *id.* at 9, and that even on "the eve of the President's directive," there was a group of protesters outside the facility "at any given time," *id.* at 21.

The district court also should have given deferential weight to the fact that the Federal Government's response was proportional. The President did not suspend civilian courts and occupy the city of Portland, but only prepared to mobilize 200 National Guardsmen to guard the facility. *See id.* at 14. Under the "especially deferential" review owed here, the continuous presence of a small crowd at a federal facility that protesters recently forced to shut down and where, as recently as late September, protestors "shined high-powered flashlights in the eyes of drivers leaving the … facility," *id.* at 10, 11, easily justify the President's conclusion that such interference with federal law enforcement in Portland is a part of a larger act of "rebellion" that warranted deployment of a proportional contingent of National Guardsmen.

Similarly, the district court was wrong to reject the President's determination that he was "unable with the regular forces to execute the laws of the United States." *Id.* at 18–23. The district court speculated that "regular forces" could handle the situation now because the irregular deployment of "115 officers from other [Federal Protective Services] Regions to Portland" had, by late September, reduced disorder to the continuous presence of a small crowd outside the ICE facility. *Id.* at 20–

10

21. Of course, the logical conclusion is that if that surge of officers was withdrawn, the Portland ICE facility would be at significant risk—but the district court flipped that on its head and used that decisively *irregular* and unsustainable deployment as somehow proof that *regular* forces could execute the laws of the United States.

Not only did the district court effectively veto the President's factual findings in favor of its own, but it did so on a very limited record, largely by uncritically accepting the factual allegations in Oregon's declarations. *See id.* at 19–22. Worse, the district court identified no threat of imminent harm to Oregon that might justify its mad rush to enjoin the President without first developing the record. Because they were made in legal error and on a very scant record, the district court's factual findings are not entitled to deference.

### iii.    Oregon's Tenth Amendment Claim Fails

The district court also erred by holding that the President's federalization of the National Guard infringed the Tenth Amendment. *See* Dist. Ct. Op. at 26–27. The district court acknowledged that this holding relies on the district court's statutory holding, *see id.* at 26 (finding violation "because the President is acting … incompatible with

11

the expressed … will of Congress") (cleaned up), which is wrong as described above.

Further, it makes little sense to categorize this dispute as implicating the Tenth Amendment. Under the Constitution, the states fully ceded to Congress their power to "provide for calling forth the Militia to execute the Laws of the Union." U.S. Const. art. I, § 8, cl. 15. "The Constitution assigns the power to 'call forth the Militia' to Congress, and Congress has delegated portions of that power to the President." *Newsom*, 141 F.4th at 1055. Accordingly, any presidential action calling forth the National Guard contrary to federal statute might implicate *Congress*'s powers, but it cannot be an offense against the *states*, which fully transferred their power to the federal government.

For all these reasons, the Federal Government is likely to succeed on the merits of its appeal.

## B. The Federal Government Will Suffer Irreparable Harm Absent a Stay

As this Court has recognized, the Federal Government has "an uncontested interest in the protection of federal agents and property and the faithful execution of law," and that interest is irreparably harmed by

12

the violent and subversive acts of so-called protesters that led the President to mobilize the National Guard. *Newsom*, 141 F.4th at 1054.

In contrast, Oregon faces no irreparable harm from a stay. The National Guard is only protecting federal property and ensuring continued enforcement of federal law. The district court held that Oregon faces harm to its sovereignty, Dist. Ct. Op. at 28, but that "is, in essence, a merits argument," which is wrong anyway, as explained above. *Newsom*, 141 F.4th at 1055 (rejecting similar Tenth Amendment argument).

The district court also held that federalizing the Oregon National Guard might impair law enforcement in Oregon by making the Guardsmen unavailable, *see* Dist. Ct. Op. at 28, but this Court has already rejected that same sort of argument as "too speculative," *Newsom*, 141 F.4th at 1055.

Further, the district court's order is internally inconsistent. On the merits, the court held that no "honest judgment" could find there was a current threat to the Portland ICE facility and that crowds were dwindling. Dist. Ct. Op. at 18. Yet when it came to irreparable harm, the district court acknowledged the "reality" that there are increasingly large

13

crowds at the ICE facility *right now* and that federalizing the National Guard to protect the ICE facility was preventing those very same Guardsmen from helping Oregon protect the ICE facility. *Id.* at 28–29.

Besides being internally inconsistent on whether crowds were diminishing or growing, the district court's conclusion makes no sense: how could federalizing Guardsmen at the ICE facility somehow divert those same Guardsmen from being used by Oregon to protect the very same facility? There is no "harm[] from diversion" when there is no diversion in the first place.

Finally, if deployment of the National Guard to the Portland ICE facility increases civil unrest, as the district court assumed, then that is good evidence there really is a "rebellion" against federal immigration law. And if that is right, it amounts to an argument for a *larger* National Guard deployment rather than no deployment at all.

## C.    The Balance of Equities and Public Interest Favor a Stay

"When the government is a party, the last two factors (equities and public interest) merge." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021). A stay here will promote the public's interest in protecting the Constitution's Separation of Powers from the inversion

14

that occurs when a district court judge, on an incomplete factual record despite no apparent need for speed, purports to veto the President from "act[ing] pursuant to an express … authorization of Congress." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring).

The public also has an interest in ensuring that so-called protesters do not hamper enforcement of federal immigration law. *Cf. Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[I]t would not be equitable or in the public's interest to allow the state ... to violate the requirements of federal law."). The Supreme Court has explained that the equities favor the government when an injunction unnecessarily imposes a "serious threat to national security." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 32 (2008). The equities and public interest thus favor a stay, just as this Court concluded under similar circumstances in *Newsom*. 141 F.4th at 1054–56.

## II.    The District Court Lacked Jurisdiction to Issue a Second TRO

The district court also acted improperly by issuing a "Second Temporary Restraining Order" in this case on October 5, after the Federal Government filed its notice of appeal of the first TRO on October

15

4. *Oregon v. Trump*, No. 3:25-cv-01756 (D. Or. Sep. 28, 2025), ECF No. 68, 57.

The district court lacked jurisdiction to issue the second TRO because "the filing of a notice of interlocutory appeal divests the district court of jurisdiction over the particular issues involved in that appeal." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001). Therefore, when the Federal Government filed its notice of appeal on October 4, it divested the district court of jurisdiction to issue a second TRO addressing the same issues. If the second TRO comes before this Court, it should accordingly vacate it.

## CONCLUSION

The Court should grant the Federal Government a stay pending appeal of the district court's first temporary restraining order and vacate the second temporary restraining order.

Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER
NICHOLAS A. CORDOVA
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
202.706.5488
tmccotter@boydengray.com

GENE HAMILTON
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003

Counsel for *Amicus Curiae*

17

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this brief was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word. Fed. R. App. P. 29(a), 32(g)(1). This brief complies with Rule 29(a)(5) because it contains 3096 words.

/s/ R. Trent McCotter

## CERTIFICATE OF SERVICE

I hereby certify that on this date, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the ACMS filing system and that service will be accomplished using the ACMS system.

/s/ R. Trent McCotter