No. 25-6268

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————————

STATE OF OREGON, et al.,

*Plaintiffs-Appellees*,

*v.*

DONALD J. TRUMP, *in his official capacity as President of the United States*, et al.,

*Defendants-Appellants.*

————————————————

**[PROPOSED] BRIEF OF *AMICI CURIAE* LOCAL GOVERNMENTS AND LOCAL GOVERNMENT LEADERS IN SUPPORT OF APPELLEES' OPPOSITION TO APPELLANTS' EMERGENCY MOTION FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL**

————————————————

JENNY MA
JONATHAN B. MILLER
ELAINE POON
JEAN LARSEN
**PUBLIC RIGHTS PROJECT**
490 43rd Street
Oakland, CA 94609
Telephone: (510) 738-6788

*Attorneys for Amicus Curiae Listed in Appendix*

# TABLE OF CONTENTS

STATEMENT OF INTEREST.................................................... 1

SUMMARY OF ARGUMENT.................................................. 3

ARGUMENT ........................................................................ 5

I.    APPELLANTS    SEEK    TO    UNLAWFULLY
      UNLEASH    MILITARY    FORCES    WITHOUT
      FACTUAL    JUSTIFICATION    AND    UNDER
      PRETEXT THAT SEVERELY HARMS *AMICI* AND
      THE PUBLIC INTEREST. ............................................... 5

      A.    The Unlawful Federalization of the National
            Guard    Without    Justification    Irreparably
            Harms State and Local Sovereignty......................... 6

      B.    The Public Interest Is Best Served When Local
            Law   Enforcement,   Not   Federalized   Military
            Forces, Exercise Their Police Powers to Ensure
            Public Safety and Manage Local Protests................. 7

      C.    Actual and Threatened Militarization of Our
            Cities Disturbs Our Residents' Well-Being and
            Our Local Economies............................................ 11

CONCLUSION ...................................................................... 14

ADDITIONAL COUNSEL..................................................... 15

APPENDIX A - List of *Amici Curiae*.................................... 20

i

# TABLE OF AUTHORITIES

## CASES

*Doe #1 v. Trump*,
  957 F.3d 1050 (9th Cir. 2020) ............................................. 4

*Golden Gate Restaurant Ass'n v. S.F.*,
  512 F.3d 1112 (9th Cir. 2008) ........................................... 5

*Laird v. Tatum*,
  408 U.S. 1 (1972) ............................................................ 6

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................ 5

*Printz v. U.S.*,
  521 U.S. 898 (1997) ........................................................ 7

*S.F. v. Trump*,
  2025 WL 1282637 (N.D. Cal. May 3, 2025) ...................... 6

*S.F. v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ......................................... 6

## OTHER AUTHORITIES

Community Engagement Division, SFPD,
  https://perma.cc/RSY9-53VU ........................................... 8

Community Police Review Agency, Oakland,
  https://perma.cc/9ZBM-ULTC........................................... 8

*D.C. tourism was already struggling, then the National
  Guard arrived*, Wash. Post (Aug. 29, 2025) .................... 12

*D.C. v. Trump*, No. 25-civ-3005 (D.D.C. 2025), ECF 3-5,
  Schwalb Decl., ¶ 7........................................................... 12

Demonstrations and Political Violence in America: New
  Data for Summer 2020, ACLED (Sept. 3, 2020) ............... 7

*Downtown DC Businesses Hope for Increased Foot Traffic After End To Federal Takeover*, ABC 7 News (Sept. 11, 2025) .................................................. 11

*Grider v. Abramson*, 180 F.3d 739 (6th Cir. 1999) ................................................ 8

*Helping people make their voices heard*, Portland.gov (May 15, 2025) ......................................................... 7

*How National Guard Troops in D.C. Are Affecting Restaurants in the Capital*, NPR (Sept. 1, 2025) ............. 12

*Immigration Raids and Military Presence Hurting Economy in Santa Ana, Employees Say*, ABC 7 (June 11, 2025).................................................... 13

*LA Deployments to Cost $134 Million and Last 60 days, Pentagon Says,* Military Times (June 10, 2025) ............. 13

LAPD News Release (June 9, 2025) ...................................... 10

Mayor Lucas Announces Significant KCPD Accountability Measures, Pardons Roderick Reed, Kansas City (June 4, 2020) .................................................. 8

*National Guard Deployment—Estimated Cost: $10 Million—Crawls Along*, WW (Oct. 1, 2025)..................... 14

*National Guard documents show public 'fear,' veterans 'shame' over D.C. presence,* Wash. Post (Sept. 29, 2025).................................................................................. 12

New Haven, *Statement by Mayor Elicker on Yale University Students Protests and Successful De-escalation by the New Haven Police Department* (Apr. 23, 2024) ...................................................... 9

Pittsburgh Bureau of Police Roadway Safety Guidelines (July 26, 2018)................................................ 9

iii

Portland, Or., Portland Police Bureau Response to
  Public Order Events ............................................................ 8

The White House, *Additional Measures to Address the
  Crime Emergency in the District of Columbia*, §
  2(d)(ii) (Aug. 25, 2025) ...................................................... 2

*Trump Crackdown is Affecting D.C.'s Image and
  Tourism Numbers*, Axios D.C. (Aug. 29, 2025) ............... 12

*Trump Hints He Could Send National Guard to
  Oakland*, KTVU (Aug. 12, 2025) ........................................ 2

*Trump mobilizing up to 1,700 National Guard troops
  in 19 states to widen crime and immigration
  crackdown*, The Independent (Aug. 25, 2025) .................... 2

*Trump Says He Has Ordered Troops to Protect ICE
  Facilities in Portland*, N.Y. Times (Sep. 27, 2025) .......... 11

*Trump says he'll send troops to 'clean up' San
  Francisco*, SF Standard (Aug. 22, 2025) ............................ 2

*Trump wants to use U.S. cities as military 'training
  grounds.' Can judges stop him?*, LA Times (Oct. 1,
  2025) ...................................................................................... 2

*Trump's Military Deployment in L.A. Cost $120
  Million, Newsom Says*, LA Times (Sept. 4, 2025) ............ 14

*Trump's Push for More Troops in US Cities at Odds
  with Crime Stats*, Military Times (Aug. 29, 2025) ........... 12

iv

## STATEMENT OF INTEREST

*Amici curiae* are local governments and officials from across the Nation.[1] Their municipalities and counties differ in size, demographics, and policy priorities, but share a common interest in keeping communities safe, protecting the First Amendment rights of their residents, and avoiding pretextual punishment by the Executive branch. Through decades of experience, *amici* (like appellees) have successfully deployed policies and practices that balance public safety needs with the rights of their residents.

By federalizing the Oregon National Guard without any factual basis, appellants failed to meet statutory thresholds and trampled on the foundational principles forbidding Federal military involvement in civilian law enforcement. Worse still, this drastic measure is baseless, arbitrary, and seemingly animated by pretext and misinformation. There is no rebellion or unrest that would turn lawful this latest in a series of

---

[1] All parties have consented to the filing of this brief. *See* Fed. R. Civ. P. 29(a)(2). No party or party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparation or submission of this brief. A list of all *amici* is provided at Appendix A.

1

unprecedented military deployments across the country. Yet, appellants have now attempted twice to unlawfully send the National Guard to patrol Portland's streets. Worse, the President has made plain his desire to treat American cities as "training grounds."[2] Indeed, plans are underway to deploy the National Guard to nineteen more States,[3] with an Executive Order instructing for further deployments.[4] These are not theoretical plans: just yesterday, the President sought to deploy 400 members of the Texas National Guard "where needed, including in the cities of Portland and Chicago."[5] *Amici* have a strong interest in ensuring that unmoored and unnecessary deployments cease and that order to the rule of law is restored.

---

[2] *Trump wants to use U.S. cities as military 'training grounds.' Can judges stop him?*, LA Times (Oct. 1, 2025), https://perma.cc/MMV3-G4SA; *see also Trump says he'll send troops to 'clean up' San Francisco*, SF Standard (Aug. 22, 2025), https://perma.cc/MS76-R5KR; *Trump Hints He Could Send National Guard to Oakland*, KTVU (Aug. 12, 2025), https://perma.cc/4LGY-5E6D (naming specific cities).

[3] *Trump mobilizing up to 1,700 National Guard troops in 19 states to widen crime and immigration crackdown*, The Independent (Aug. 25, 2025), https://perma.cc/6U2S-KEP8.

[4] The White House, *Additional Measures to Address the Crime Emergency in the District of Columbia*, § 2(d)(ii) (Aug. 25, 2025), https://perma.cc/3AF2-QMQ4 .

[5] *See* ECF 65-1.

2

*Amici* are gravely concerned that any protest—real or perceived—within their borders will result in another unnecessary deployment of the military. Worse still, the President could issue an order seeking to federalize troops at *any time*, *anywhere*, *for any reason*—based on nothing more than sporadic incidents of protest or being a disfavored jurisdiction. Not only does this harm *amici*'s interests and police powers, but it also disturbs *amici*'s interest in peace and tranquility, and in the well-being of our residents and our local economies. *Amici* respectfully submit this brief in support of appellees' opposition to appellants' emergency motion for administrative stay and stay of the district court's temporary restraining order pending appeal.

## SUMMARY OF ARGUMENT

Our nation's constitutional order demands that Federal military deployment for civilian law enforcement be restricted and that federal courts hold that line against Executive overreach. As the district court correctly found, now twice in less than two days, no circumstances exist in Portland today that would disturb this long-established prohibition. Yet, the President sought to federalize 200 members of the National Guard with no credible justification to do so, over the objection of state

3

and local authorities. When the district court temporarily enjoined deployment, the President attempted to federalize even more out-of-state National Guard members. Federalizing and deploying the National Guard is a last resort, not a primary tactic, reserved for those exceedingly rare instances of foreign invasion, violent rebellion, or where local resources are so completely overwhelmed as to be unable to execute the laws. This Court should reject appellants' stay requests.

*Amici* emphasize that unwarranted military policing dramatically increases the risk of irreparable injury. Military troops patrolling our communities inflames tensions, decreases the efficacy of local law enforcement, and increases risks of tragic accidents. And it disturbs our residents' peace and well-being and disrupts our local businesses and economies. This is especially true where, as here, military troops are deployed on city streets irrespective of any factual reality on the ground.

For these reasons and those below, the status quo before appellants' unlawful and pretextual military mobilization was decisively better for the public interest. This Court should deny appellants' motion. *See Doe #1 v. Trump,* 957 F.3d 1050, 1068 (9th Cir. 2020) (denying motion to stay injunction where public interest lies with preserving decades-old

4

governance system).

## ARGUMENT

## I. APPELLANTS SEEK TO UNLAWFULLY UNLEASH MILITARY FORCES WITHOUT FACTUAL JUSTIFICATION AND UNDER PRETEXT THAT SEVERELY HARMS *AMICI* AND THE PUBLIC INTEREST.

The district court correctly concluded that both temporary restraining orders are warranted. No legal authority or factual justification exists in this record for appellants to federalize the Oregon National Guard and attempt to invade another U.S. city. The public interest and the balance of equities support denying appellants' motion and allowing the district court's order to remain pending appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

In considering a stay, courts look to all who would be impacted by the requested stay pending appeal. *Golden Gate Restaurant Ass'n v. S.F.*, 512 F.3d 1112, 1126–27 (9th Cir. 2008). Here, *amici* represent a cross section of the public interest. They assert the serious harm that municipalities and counties face when the National Guard is mobilized without a request by the local or state government based on a determination that is "simply untethered to the facts" *see* ECF 56 at 23.

5

A. **The Unlawful Federalization of the National Guard Without Justification Irreparably Harms State and Local Sovereignty.**

A bedrock embodiment of state and local sovereignty over the police power is the steadfast refusal to allow the military to engage in domestic policing. *See Laird v. Tatum*, 408 U.S. 1, 15–16 (1972). Appellants' federalization of the National Guard shatters that legal tradition. In so doing, appellants likely cause irreparable harm to appellees' sovereignty and threaten that harm to other localities nationwide. ECF 56 at 27–28.

*Amici* urge this Court to consider the distinct and irreparable injury that local governments nationwide suffer from when the President unlawfully deploys military forces on our streets. The National Guard's management of local protests usurps local government's constitutional interest to provide for the general welfare of their residents through their police power. *See S.F. v. Trump*, 2025 WL 1282637, at *22 (N.D. Cal. May 3, 2025) (citing *S.F. v. Trump*, 897 F.3d 1225, 1234–36 (9th Cir. 2018)). Appellants are undermining "localities' right to sovereignty and self-determination [that] forms the bedrock of our republic." *Id.* And this federal intrusion "diminish[es] the accountability" of federal officials by "put[ting] [state and local governments] in the position of taking the

6

blame for its burdensomeness and for its defects." *Printz v. U.S.*, 521 U.S. 898, 929–30 (1997). This infringement on local sovereignty weighs strongly against the public interest.

**B.   The Public Interest Is Best Served When Local Law Enforcement, Not Federalized Military Forces, Exercise Their Police Powers to Ensure Public Safety and Manage Local Protests.**

The vast majority of protests across the United States are peaceful.[6] In the rare circumstances when demonstrations threaten public safety, local law enforcement are better trained than military forces to handle such incidents. Indeed, the district court detailed just how trained and ready local law enforcement officers have been in   balancing crowd management, First Amendment activity (including large scale protests), and de-escalating disruption around Portland's ICE facility specifically.[7] *See* ECF 56 at 8-11.

Unlike the National Guard, which secures combat and natural

---

[6] *See, e.g.*, Demonstrations and Political Violence in America: New Data for Summer 2020, ACLED (Sept. 3, 2020), https://perma.cc/8VD5-Z9D4 (finding 93% of national demonstrations—in 2,400 locations—were peaceful).

[7] Portland also has specialized officers who are tasked with liaising with protestors to help keep crowds safe. *See Helping people make their voices heard*, Portland.gov (May 15, 2025), https://perma.cc/WER7-L652.

disaster zones, local law enforcement has extensive experience managing protests and deep understanding of their communities. *Amici*, like appellees,[8] have established procedures and training that balance public safety, individual rights, the protection of property, crowd management, and the preservation of residents' fundamental constitutional rights. *See* ECF 56 at 6; *see also Grider v. Abramson*, 180 F.3d 739, 751-53 (6th Cir. 1999) (local governments have "significant public interests in fostering the privileges of free expression and assembly" and in "the preservation of community peace").

*Amici*'s police departments also have extensive experience developing strategies that work best for their cities. Law enforcement agencies accordingly devote significant time to community engagement with the aim of building the public's trust.[9] As a result, local law

---

[8] Portland, Or., Portland Police Bureau Response to Public Order Events, https://perma.cc/98L7-X9CF (extensive definitions, policies, and directives for responding effectively, while balancing "lawful assembly and expression of speech while also maintaining public safety, peace, and order.").

[9] *See* Community Engagement Division, SFPD, https://perma.cc/RSY9-53VU; *see also* Community Police Review Agency, Oakland, https://perma.cc/9ZBM-ULTC; Mayor Lucas Announces Significant KCPD Accountability Measures, Pardons Roderick Reed, Kansas City (June 4, 2020) https://perma.cc/48L7-JJCS.

enforcement understands which tactics might escalate a situation in a particular community and what might be more useful in calming that same community. These tactics are not window-dressing; they succeed in deescalating serious conflicts.[10] Military troops with no local orientation lack these critical insights. Indeed, as the district court noted, their deployment itself inflames protesters. *See* ECF 56 at 29 (the district court noting that, on the night of appellee's deployment announcement, "the size of protests increased substantially"). And history demonstrates that this pattern repeats. *See* Br. of Cal. and Gov. Newsom as *Amici Curiae*, ECF 41–1 at 11 (pointing out that National Guard mobilization actually inflamed further protests in L.A., including spawning new unrest that required more state resources); *see also* Decl. of Caroline Turco, ECF 13 ¶ 3 (deployment of Federal law enforcement to Portland in 2020 "reignited" protests and riots that had "largely self-extinguished.").

And to the extent necessary, at an operational level, local governments like *amici* and appellees have established policies and

---

[10] Pittsburgh Bureau of Police Roadway Safety Guidelines (July 26, 2018), https://perma.cc/WB57-5TJP*; see also* New Haven, *Statement by Mayor Elicker on Yale University Students Protests and Successful Deescalation by the New Haven Police Department* (Apr. 23, 2024), https://perma.cc/897J-HJCV.

procedures for coordinating responses to significant emergencies and civil unrest when local resources prove to be insufficient. They allow local governments to request additional state and local resources in a practiced manner that will avoid interagency conflicts, deescalate tensions and prevent widespread disorder. *See, e.g.,* ECF 56 at 20–21 (describing appellee City's "close coordination" with Federal Protective Services officers). Centralized information-sharing and coordination of responses within these groups avoids putting the public or law enforcement at risk, without the need for any military forces. As the district court concluded, "the regular forces… *were able* to execute the laws of the United States." *Id.* at 21 (emphasis in original).

Deploying military troops outside of these established processes heightens the likelihood of coordination failures and introduces more complexity and risk for local law enforcement and the public.[11] This is particularly true where appellants deploy the National Guard in response to what has been described as a small protest, "rarely numbering more than two dozen" protestors.[12] On the night of the

---

[11] LAPD News Release (June 9, 2025), https://perma.cc/GWV3-K33M.

[12] *Trump Says He Has Ordered Troops to Protect ICE Facilities in*

10

President's deployment, law enforcement "observed approximately 8-15 people at any given time out front of ICE. Mostly sitting in lawn chairs…." *See* ECF 56 at 21 (citing Hughes Decl., Exs. 22, 26).

As the district court noted, there is no doubt that local law enforcement is better positioned to manage local protests—even those that result in unrest—to ensure the proper balance between people, property, and rights. *Id.* at 21.

### C. Actual and Threatened Militarization of Our Cities Disturbs Our Residents' Well-Being and Our Local Economies.

Federal military presence, when deployed without cause, damages *amici*'s communities psychologically and economically. Far from feeling safer, residents report that Federal soldiers' occupancy of their cities causes anxiety, disrupts community harmony, and damages the local economy.[13] Even internal documents suggest that Federal military leaders are aware that appellants' actions are perceived as "leveraging fear," driving a "wedge between citizens and the military," and promoting

---

*Portland*, N.Y. Times (Sep. 27, 2025), https://perma.cc/SJ3S-GLHP.

[13] *Downtown DC Businesses Hope for Increased Foot Traffic After End To Federal Takeover*, ABC 7 News (Sept. 11, 2025), https://perma.cc/HGX5-G7RQ.

11

a sense of "shame" among some troops and veterans.[14] Experts note that the presence of troops in neighborhoods increases individuals' perception of danger, not security.[15] Rather than strengthening trust, Appellants threaten to unravel decades of work that *amici* have invested in building trust with our communities.

*Amici*'s local economies are also suffering. Many *amici* count tourism as a top generator of economic stability. Evidence shows that the military presence is deterring visitors,[16] and the National Guard in D.C. and L.A. have caused abrupt declines in tourism.[17] Restaurants have also lost business;[18] and major community events have reduced attendance.[19] Moreover, the unnecessary deployment of federal law enforcement to City

---

[14] *National Guard documents show public 'fear,' veterans 'shame' over D.C. presence,* Wash. Post (Sept. 29, 2025) https://perma.cc/S5QX-8VNB.

[15] *Trump's Push for More Troops in US Cities at Odds with Crime Stats*, Military Times (Aug. 29, 2025), https://perma.cc/2RVT-E7GK.

[16] *Trump Crackdown is Affecting D.C.'s Image and Tourism Numbers*, Axios D.C. (Aug. 29, 2025), https://perma.cc/CR64-X3JY.

[17] *D.C. v. Trump*, No. 25-civ-3005 (D.D.C. 2025), ECF 3-5, Schwalb Decl., ¶ 7, https://perma.cc/BZ7A-8LDW.

[18] *How National Guard Troops in D.C. Are Affecting Restaurants in the Capital*, NPR (Sept. 1, 2025), https://perma.cc/6AU5-HENA.

[19] *D.C. tourism was already struggling, then the National Guard arrived*, Wash. Post (Aug. 29, 2025), https://perma.cc/BRG6-4D7T.

appellee has historically provoked heightened civil unrest, which can exacerbate economic losses.[20]

Negative effects from the deployments are not confined—and surrounding counties also feel the effects. The fear and confusion caused by deployment in L.A., for example, has spilled over to neighboring Santa Ana, where a "large part of the community stays home in fear," depressing economic activity.[21]

Members of the National Guard are also residents of *amici*'s communities. They hold jobs, raise their families, and contribute to *amici*'s social fabric. Many deployed Guard members are missing family milestones and work, all while expressing shame about their present mission.[22] At the same time, taxpayers are paying the massive price of these deployments—$134 million for L.A. alone, and an estimated $10 million for Oregon.[23]

---

[20] *See* Turco Decl. ¶¶ 3-4.

[21] *Immigration Raids and Military Presence Hurting Economy in Santa Ana, Employees Say*, ABC 7 (June 11, 2025), https://perma.cc/NFP8-7E3B.

[22] *Supra* n.14.

[23] *LA Deployments to Cost $134 Million and Last 60 days, Pentagon Says,* Military Times (June 10, 2025), https://perma.cc/2N6D-ZPWH; *National Guard Deployment—Estimated Cost: $10 Million—Crawls*

13

*Amici*, representing millions of Americans, have a fundamental interest in ensuring that these unnecessary deployments cease and that the rule of law is restored.

## CONCLUSION

The public interest overwhelmingly supports maintaining the status quo, and this Court should deny appellant's emergency motion for an administrative stay and stay pending appeal of the district court's order.

Dated:  October 6, 2025                Respectfully submitted,


                                       JENNY MA
                                       JONATHAN B. MILLER
                                       ELAINE POON
                                       JEAN LARSEN
                                       **PUBLIC RIGHTS PROJECT**
                                       490 43rd Street, #115 Oakland,
                                       CA 94609
                                       Telephone: (510) 738-6788

                                       *Attorneys for Amici Curiae*
                                       *Listed in Appendix A*

_____

*Along*, WW (Oct. 1, 2025), https://perma.cc/Z9X8-ZX8W; *Trump's Military Deployment in L.A. Cost $120 Million, Newsom Says*, LA Times (Sept. 4, 2025), https://perma.cc/H3FE-E9FC.

14

# ADDITIONAL COUNSEL

YIBIN SHEN
City Attorney
2263 Santa Clara Avenue, Room
    280
Alameda, CA 94501
*Attorney for the City of Alameda,*
    *California*

LAUREN KEEFE
City Attorney of Albuquerque
One Civic Plaza, 4th Floor
Albuquerque, NM 87102
*Attorney for the City of*
    *Albuquerque, New Mexico*

CHERAN IVERY
City Attorney
301 King Street, Suite 1300
Alexandria, VA 22314
*Attorney for the City of*
    *Alexandria, Virginia*

ROSALYN GUY-MCCORKLE
Allegheny County Solicitor
445 Fort Pitt Boulevard, Suite
    300
Pittsburgh, PA 15219
*Attorney for County of Allegheny,*
    *Pennsylvania*

ATLEEN KAUR
City Attorney
Guy C. Larcom City Hall
301 East Huron, 3rd Floor
Ann Arbor, MI 48104
*Attorney for the City of Ann*
    *Arbor, Michigan*

EBONY M. THOMPSON
City Solicitor
Baltimore City Department of
    Law
100 North Holliday Street
Baltimore, MD 21202
*Attorney for the City of*
    *Baltimore, Maryland*

FARIMAH FAIZ BROWN
City Attorney
2180 Milvia Street, 4th Floor
Berkeley, CA 94704
*Attorney for the City of Berkeley,*
    *California*

ADAM CEDERBAUM
Corporation Counsel
One City Hall Square, Room 615
Boston, MA 02201
*Attorney for the City of Boston,*
    *Massachusetts*

15

JESSICA C. BROWN
City Attorney
Office of City Attorney &
    Corporation Counsel
149 Church Street
Burlington, VT 05401
*Attorney for the City of
    Burlington, Vermont*

MEGAN BAYER
City Solicitor
795 Massachusetts Avenue
Cambridge, MA 02139
*Attorney for the City of
    Cambridge, Massachusetts*

MARY B. RICHARDSON-
    LOWRY
Corporation Counsel of the City
    of Chicago
121 North LaSalle Street, Room
    600
Chicago, IL 60602
*Attorney for the City of Chicago,
    Illinois*

CARLOS PABELLON
Corporation Counsel
DAVID R. GAULT
Deputy Corporation Counsel
Room 419, City-County Building
210 Martin Luther King, Jr.,
    Boulevard
Madison, WI 53703
*Attorneys for County of Dane,
    Wisconsin*

MIKO BROWN
City Attorney
1437 Bannock Street, Room 353
Denver, CO 80202
*Attorney for the City and County
    of Denver, Colorado*
LEESA MANION
Prosecuting Attorney
Chinook Building
401 5th Avenue, Suite 800
Seattle, WA 98104
*Prosecuting Attorney for Martin
    Luther King, Jr. County*

DAWN MCINTOSH
City Attorney
411 West Ocean Boulevard, 9th
    Floor
Long Beach, CA 90802
*Attorney for the City of Long
    Beach, California*

HYDEE FELDSTEIN SOTO
City Attorney
200 North Main Street, 8th Floor
Los Angeles, CA 90012
*Attorney for the City of Los
    Angeles, California*

16

JUDY W. WHITEHURST
Chief Deputy
LILIANA CAMPOS
Assistant County Counsel
BRIGIT GREESON ALVAREZ
Deputy County Counsel
648 Kenneth Hahn Hall of
    Administration
500 West Temple Street
Los Angeles, CA 90012-2713
*Attorneys for the County of Los
    Angeles*

MICHAEL HAAS
    City Attorney
    210 Martin Luther King Jr.
    Blvd., Room 401
    Madison, WI 53703
    *Attorney for the City of
    Madison, Wisconsin*

KRISTYN ANDERSON
City Attorney
350 South Fifth Street
Minneapolis, MN 55415
*Attorney for the City of
    Minneapolis, Minnesota*

JOHN P. MARKOVS
Montgomery County Attorney
101 Monroe Street, 3rd Floor
Rockville, MD 20850
*Attorney for Montgomery County,
    Maryland*

JENNY MADKOUR
County Attorney
501 Southeast Hawthorne
    Boulevard, Suite 500
Portland, OR 97214
*Attorney for Multnomah, Oregon*

PATRICIA KING
Corporation Counsel
165 Church Street
New Haven, CT 06510
*Attorney for the City of New
    Haven, Connecticut*

MURIEL GOODE-TRUFANT
Corporation Counsel
100 Church Street
New York, NY 10007
*Counsel for the City of New York,
    New York*

RYAN RICHARDSON
City Attorney
One Frank H. Ogawa Plaza, 6th
    Floor
Oakland, CA 94612
*Attorney for the City of Oakland,
    California*

LAURA CONOVER
County Attorney
Pima County Attorney's Office
32 North Stone Avenue
Tucson, AZ 85745
*Attorney for Pima County,
    Arizona*

17

KRYSIA KUBIAK
City Solicitor and Chief Legal
   Officer
414 Grant Street
Pittsburgh, PA 15219
*Attorney for the City of
   Pittsburgh, Pennsylvania*

PATRICK BEATH
Corporation Counsel
30 Church Street, Room 400A
Rochester, New York 14614
*Attorney for the City of Rochester,
   New York*

SUSANA ALCALA WOOD
City Attorney
915 I Street, Fourth Floor
Sacramento, CA 95814
*Attorney for City of Sacramento,
   California*

LYNDSEY M. OLSON
City Attorney
400 City Hall & Court House
15 West Kellogg Boulevard
St. Paul, MN 55102
*Attorney for the City of St. Paul,
   Minnesota*

HEATHER FERBERT
San Diego City Attorney
1200 3rd Avenue, Suite 1100
San Diego, CA 92101
*Attorney for the City of San
   Diego, California*

NORA FRIMANN
City Attorney
200 East Santa Clara Street,
   16th Floor
San José, CA 95113
*Attorney for the City of San José,
   California*

TONY LOPRESTI
County Counsel
70 West Hedding Street East
   Wing, 9th Floor
San José, CA 95110
*Attorney for County of Santa
   Clara, California*

JOHN D. NIBBELIN
County Counsel
400 County Center, 6th Floor
Redwood City, CA 94063
*Attorney for San Mateo County,
   California*

HEIDI VON TONGELN
Interim City Attorney
1685 Main Street, Room 310
Santa Monica, CA 90401
*Attorney for the City of Santa
   Monica, California*

18

DAVID CHIU
City Attorney
City Hall Room 234
One Dr. Carlton B. Goodlett
   Place
San Francisco, CA 94102
*Attorney for the City and County
   of San Francisco, California*

LAUREN LANGER
City Attorney
Best Best & Krieger LLP
300 S. Grand Avenue, 25th Floor
Los Angeles, CA 90071
*Attorney for City of West
   Hollywood, California*

## APPENDIX A - List of *Amici Curiae*

## Local Governments

City of Alameda, California

City of Albuquerque, New Mexico

City of Alexandria, Virginia

Allegheny County, Pennsylvania

City of Anaheim, California

City of Ann Arbor, Michigan

City of Baltimore, Maryland

City of Berkeley, California

City of Boston, Massachusetts

City of Burlington, Vermont

City of Cambridge, Massachusetts

City of Chicago, Illinois

Dane County, Wisconsin

City and County of Denver, Colorado

City of Evanston, Illinois

King County, Washington

City of Long Beach, California

20

City of Los Angeles, California

Los Angeles County, California

City of Madison, Wisconsin

City of Minneapolis, Minnesota

Montgomery County, Maryland

Multnomah County, Oregon

City of Newark, New Jersey

City of New Haven, Connecticut

City of New York, New York

City of Oakland, California

Pima County, Arizona

City of Pittsburgh, Pennsylvania

City of Rochester, New York

City of Sacramento, California

City of St. Paul, Minnesota

City of San Diego, California

City of San José, California

County of Santa Clara, California

San Mateo County, California

21

City of Santa Monica, California

City and County of San Francisco, California

Sonoma County, California

City of West Hollywood, California

**Local Government Leaders**

Luis Alejo
*Supervisor, County of Monterey, California*

Valarie Bachelor
*School Board Director, City of Oakland, California*

Jorge Baron
*Councilmember, King County, Washington*

Ravinder Bhalla
*Mayor, City of Hoboken, New Jersey*

Andy Brown
*Judge, Travis County, Texas*

Jesse Brown
*Councilmember, City of Indianapolis, Indiana*

Xouhoa Bowen
*Vice Mayor, City of San Leandro, California*

Chelsea Byers
*Mayor, City of West Hollywood, California*

22

Barb Byrum
*Clerk, Ingham County, Michigan*

Chris Canales
*Councilmember, City of El Paso, Texas*

Michael Chameides
*Supervisor, County of Columbia, New York*

John Clark
*Mayor, Town of Ridgway, Colorado*

Laura Conover
*County Attorney, County of Pima, Arizona*

Christine Corrado
*Councilmember, Township of Brighton, New York*

Olgy Diaz
*Councilmember, City of Tacoma, Washington*

Roger Dickinson
*Councilmember, City of Sacramento, California*

Justin Douglas
*Commissioner, Dauphin County, Pennsylvania*

Diane Ellis-Marseglia
*Commissioner, Bucks County, Pennsylvania*

Marilyn Ezzy Ashcraft
*Mayor, City of Alameda, California*

23

Ramin Fatehi
*Commonwealth's Attorney, City of Norfolk, Virginia*

Bryan "Bubba" Fish
Councilmember, City of Culver, California

Vanessa Fuentes
*Mayor Pro Tem, City of Austin, Texas*

Brenda Gadd
*Councilmember, Metropolitan Nashville & Davidson County, Tennessee*

Adrian Garcia
*Commissioner, County of Harris, Texas*

Heidi Garrido
*Councilmember, City of Hopkins, Minnesota*

Delia Garza
*County Counsel, Travis County, Texas*

José Garza
*District Attorney, Travis County, Texas*

Megan Green
*President of Board of Alderman, St. Louis County, Missouri*

Jonathan Guzmán
*School Committee Vice-Chair, City of Lawrence, Massachusetts*

Beau Harbin
*Legislator, County of Cortland, New York*

24

Robert J. Harvie
*Commissioner, Bucks County, Pennsylvania*

Jani Hitchen
*Councilmember, County of Pierce County, Washington*

Stephanie Howse-Jones
*Councilmember, City of Cleveland, Ohio*

Susan Hughes-Smith
*Legislator, County of Monroe, New York*

Christopher Jaramillo
*Norristown Area School District Board President, County of Montgomery, Pennsylvania*

Lisa Kaplan
*Councilmember, City of Sacramento, California*

Lisa Lawitzke
*Clerk, Township of Bellevue, Michigan*

Jessie Lopez
*Councilmember, City of Santa Ana, California*

Kim Lund
*Mayor, City of Bellingham*

Christian Menefee
*County Attorney, Harris County, Texas*

William Moehle
*Supervisor, Town of Brighton, New York*

25

Steve Mulroy
*District Attorney, County of Shelby, Tennessee*

Arnetta Murray
*Councilmember, City of Iowa Colony, Texas*

Linda Mussmann
*Supervisor, City of Hudson, New York*

Jonathan Nieuwsma
*Councilmember, City of Evanston, Illinois*

Isabel Piedmont-Smith
*Councilmember, City of Bloomington, Illinois*

Jacqueline "Jack" Porter
*Commissioner, City of Tallahassee, Florida*

Delishia Porterfield
*Councilmember, Metropolitan Nashville & Davidson County, Tennessee*

Satya Rhodes-Conway
*Mayor, City of Madison, Wisconsin*

Ryan Richardson
*City Attorney, City of Oakland, California*

Amanda Rodriguez
*Councilmember, City of San Marcos, Texas*

Rossana Rodríguez Sánchez
*Alderperson, City of Chicago, Illinois*

26

Miguel Sanchez
*Councilmember, City of Providence, Rhode Island*

Dawn Marie Sass
*Clerk/Deputy Treasurer, City of Exeter, Wisconsin*

Seema Singh
*Councilmember, City of Knoxville, Tennessee*

David Stout
*Commissioner, City of El Paso, Texas*

Lena Tam
*Supervisor, County of Alameda, California*

Terry Vo
*Metro Councilmember, Metropolitan Nashville & Davidson County, Tennessee*

Braxton White
*Commissioner, County of Clarion, Pennsylvania*

Robin Wilt
*Councilmember, Township of Brighton, New York*

27

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**  | 25-6268 |

The undersigned attorney or self-represented party states the following:

○  I am unaware of any related cases currently pending in this court.

○  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

◉  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

> Newsom v. Trump, No. 25–3727 addresses similar issues as this case.

**Signature** | /s/ Jonathan B. Miller |  **Date** | October 7, 2025 |
*(use "s/[typed name]" to sign electronically-filed documents)*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)**  25-6268

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are __NOT__ Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

BRIEF OF AMICI CURIAE LOCAL GOVERNMENTS AND LOCAL GOVERNMENT LEADERS IN SUPPORT OF APPELLEES' OPPOSITION TO APPELLANTS' EMERGENCY MOTION FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

**Signature**  /s/ Jonathan B. Miller         **Date**  October 7, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 2,572

I am the attorney or self-represented party.

**This brief contains** [　　　] **words,** including [0] words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　☐ it is a joint brief submitted by separately represented parties.
　☐ a party or parties are filing a single brief in response to multiple briefs.
　☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [　　　].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Jonathan B. Miller | **Date** | October 7, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*