NO. 25-6268

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF OREGON, et al.

*Plaintiffs–Appellees,*

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, et al.,

*Defendants–Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
No. 3:25-cv-01756-IM
The Honorable Karin J. Immergut

**BRIEF FOR THE STATES OF WASHINGTON, MARYLAND, ARIZONA, COLORADO, CONNECTICUT, DELAWARE, HAWAIʻI, ILLINOIS, MAINE, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, RHODE ISLAND, VERMONT, WISCONSIN, THE DISTRICT OF COLUMBIA, AND THE OFFICES OF THE GOVERNORS OF KANSAS, KENTUCKY AND PENNSYLVANIA AS AMICI CURIAE IN OPPOSITION TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL**

ANTHONY G. BROWN
Attorney General of Maryland

MICHAEL DREZNER
ADAM KIRSCHNER
JAMES C. LUH
VIRGINIA A. WILLIAMSON
Assistant Attorneys General
200 Saint Paul Place

NICHOLAS W. BROWN
Attorney General of Washington

PATRICIO MARQUEZ
EMILY NELSON
ANDREW HUGHES
ALEXIA DIORIO
Assistant Attorneys General
Office of the Attorney General

Baltimore, MD 21202
410-576-6959
MDrezner@oag.state.md.us
AKirschner@oag.state.md.us
JLuh@oag.state.md.us
VWilliamson@oag.state.md.us

800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
Patricio.Marquez@atg.wa.gov
Emily.Nelson@atg.wa.gov
Andrew.Hughes@atg.wa.gov
Alexia.Diorio@atg.wa.gov

*(Additional Amici on Signature Page)*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................1

II.   IDENTITY AND INTERESTS OF AMICI .....................................1

III.  ARGUMENT ...............................................................................1

    A.  Fear of Military Rule Compelled the Framers to Embed
        State Control of the Militias in the Constitution ........................1

    B.  Presidents Have Carefully Avoided Domestic Deployment
        of Militia Unless Absolutely Necessary ....................................4

    C.  Deployment of the National Guard Infringes on the
        Sovereignty and Police Powers Reserved to States ..................7

IV.  CONCLUSION ...........................................................................10

i

# TABLE OF AUTHORITIES

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
  458 U.S. 592 (1982) ................................................7

*Bissonette v. Haig*,
  776 F.2d 1384 (8th Cir. 1985) ...........................................1, 2

*Duncan v. Kahanamoku*,
   327 U.S. 304 (1946). ...........................................2

*Laird v. Tatum*,
  408 U.S. 1 (1972). ...........................................2

*Metropolitan Life Ins. Co. v. Massachusetts*,
  471 U.S. 724 (1985) ...........................................7

*New York v. New Jersey*,
  598 U.S. 218 (2023). ...........................................7

*Perpich v. Dep't of Def.*,
  496 U.S. 334 (1990). ...........................................4

*Reid v. Covert*,
   354 U.S. 1 (1957) ...........................................2, 3

## Statutes

10 U.S.C. § 12406 ...........................................5

## Other Authorities

Army National Guard, *Basic Training Phases*,
  https://tinyurl.com/23n4kveh (last visited Oct. 8, 2025) ......................8

Articles of Confederation of 1781, art. VI, para. 4 ................................3

*Declaration and Resolves of the First Continental Congress*,
  Yale L. Sch.: Avalon Project (Oct. 14, 1774),
  https://tinyurl.com/v2ntbfj7 ...........................................3

Exec. Order No. 11519, 35 Fed. Reg. 5001, 5003 (Mar. 24, 1970);
    Alexander F. Barnes, *On the Border: The National Guard
    mobilizes for war in 1916*, U.S. Army (Feb. 26, 2016),
    https://www.army.mil/article/162413/on_the_border_the_national
    _guard_mobilizes_for_war_in_1916 ...................................................................6

Exec. Order No. 11519,
    35 Fed. Reg. 5003 (March 23, 1970) ...................................................................6

Frederick Bernays Wiener, *The Militia Clause of the Constitution*,
    54 Harv. L. Rev. 181 (1940)...........................................................................4

Mary C. Lawton, Memorandum from Antonin Scalia to the Deputy Att'y
    Gen. Re: L. Relating to Civ. Disturbances (Jan. 6, 1975),
    https://perma.cc/B628-5ANM. ..........................................................................5

Police Exec. Res. Forum, *MPD Leaders Should Remain in Charge
    of Their Police Department* (Aug. 16, 2025),
    https://tinyurl.com/3wn4f4z9. ..........................................................................8

President Dwight D. Eisenhower, *Radio and Television Address
    to the American People on the Situation in Little Rock*,
    The American Presidency Project (Sept. 24, 1957),
    https://tinyurl.com/yzer647h ..........................................................................5

President George Bush, *Address to the Nation on the Civil
    Disturbances in Los Angeles, California*, The American Presidency
    Project  (May 1, 1992),
    https://tinyurl.com/55mx5ch3. ..........................................................................5

*Speech: Donald Trump Addresses Military Leadership in Quantico,
    Virginia* - September 30, 2025, Roll Call (Sept. 30, 2025),
    https://rollcall.com/factbase/trump/transcript/donald-trump-speech-
    department-of-defense-leaders-quantico-september-30-2025/. ...........................10

The Examination of Doctor Benjamin Franklin, before an August
    Assembly, relating to the the Repeal of the Stamp Act, &c.,
    *Examination before the Committee of the Whole of the House
    of Commons, 13 February 1766* (Feb. 13, 1766), https://tinyurl.com
    /577emuzh ....................................................................................................9

iii

*The Federalist No. 29* (Alexander Hamilton) ...........................................................6

U.S. Air Force, *Basic Military Training*,
    https://tinyurl.com/4wy75u4z (last visited Oct. 8, 2025).......................................8

U.S. Dep't of Def., *Trump Renames DOD to Department of War*
    (Sept. 5, 2025),
    https://tinyurl.com/ymy9w5zw.............................................................9

William S. Fields & David T. Hart, *The Militia and the Constitution:
    A Legal History*, 136 Mil. L. Rev. 1, 26 (1992) .....................................3

<u>Constitutional Provisions</u>

U.S. Const. art. I, § 8, cl. 15.......................................................................4

U.S. Const. art. II, § 2, cl. 1 .....................................................................4

# I.    INTRODUCTION

President Trump's deployment of Oregon's National Guard, and attempted deployment of out-of-state Guard forces in Oregon, without the consent of Oregon's Governor and in violation of the statute on which the President relies, is unlawful, unconstitutional, and undemocratic. It is inconsistent with one of our Nation's founding principles that freedom depends on the subordination of the military to civilian authority. It violates core constitutional principles of federalism, and it infringes on the sovereignty and police powers reserved to the States. By calling forth troops when there is no invasion to repel, no rebellion to suppress, and when state and local law enforcement are fully able to execute the law, the President flouts the vision of our Founders, undermines the rule of law, and sets a chilling precedent that puts the constitutional rights of all Americans at risk.

# II.    IDENTITY AND INTERESTS OF AMICI

The identity and interests of the Amici States are detailed in their contemporaneously filed Motion for Leave to file this brief.

# III.    ARGUMENT

## A.    Fear of Military Rule Compelled the Framers to Embed State Control of the Militias in the Constitution

"Civilian rule is basic to our system of government." *Bissonette v. Haig*, 776 F.2d 1384, 1387 (8th Cir. 1985), *on reh'g*, 800 F.2d 812 (8th Cir. 1986), *aff'd*, 485 U.S. 264 (1988). Civilian authority is necessary to uphold our liberties, because

1

the "use of military forces to seize civilians can expose civilian government to the threat of military rule and the suspension of constitutional liberties." *Id.* Military force may also threaten "vital Fourth and Fifth Amendment rights," "chill[s] the exercise" of the rights to "speak freely and to vote," and can "create the atmosphere of fear and hostility which exists in territories occupied by enemy forces." *Id.* Accordingly, "a traditional and strong resistance of Americans to any military intrusion into civilian affairs . . . has deep roots in our history." *Laird v. Tatum*, 408 U.S. 1, 15 (1972). President Trump's unconstitutional deployment of the National Guard threatens this tradition and the freedoms it protects.

Since the birth of the republic, our leaders recognized that standing armies represent an inherent threat to liberty. And they have recognized that, in peacetime, militias must not be deployed without the consent of the local populace, except in extraordinary circumstances. One of the Founders' "well-established purpose[s]" was to keep the military subordinate to civil authority. *Reid v. Covert*, 354 U.S. 1, 30 (1957) (plurality opinion); *see also Duncan v. Kahanamoku*, 327 U.S. 304, 320 (1946). Starting in 1768, King George III quartered British troops in Boston "to intimidate the local populace." *Reid*, 354 U.S. at 27. Indeed, this deployment of British soldiers in the colonies galvanized a revolution. The Founders thus embraced a commitment to civilian control, even as they faced down a war.

2

The Continental Congress stated in 1774 that "keeping a standing army in these colonies, in times of peace, without the consent of the legislature of that colony, in which such army is kept, is against law." *Declaration and Resolves of the First Continental Congress*, Yale L. Sch.: Avalon Project (Oct. 14, 1774), https://tinyurl .com/v2ntbfj7; *see also* William S. Fields & David T. Hart, *The Militia and the Constitution: A Legal History*, 136 Mil. L. Rev. 1, 26 (1992) (explaining that several early state declarations of rights agreed that "standing armies are dangerous to liberty, and ought not to be raised or kept up, without legislative consent"). And in drafting the Articles of Confederation, the Continental Congress placed primary reliance on state militias to provide security in emergencies, while eschewing the role of federal troops.[1] They further provided that each state's militia was limited to those functions needed for the "defense" of the state.

Later, in drafting the Constitution, the Framers recognized that an army, while "a necessary institution," was also "dangerous to liberty if not confined within its essential bounds." *Reid*, 354 U.S. at 24. The Constitution reflects this delicate balance, and that is particularly true with respect to state militias: States retain the authority to appoint officers and train the militia, and Congress holds the power to "call[] forth the Militia" only in specified circumstances, namely, "to execute the Laws of the Union, suppress Insurrections and repel Invasions." U.S. Const. art. I,

---

[1] Articles of Confederation of 1781, art. VI, para. 4.

§ 8, cl. 15. Accordingly, the President holds the role of "Commander in Chief of . . . the Militia of the several States," but only "when called into the actual Service of the United States." U.S. Const. art. II, § 2, cl. 1.

Consistent with these authorities, Congress has limited the President's authority to command state militia. In the early 20th century, Congress created the modern National Guard as the successor to the state militia and clarified the circumstances under which the National Guard may be federalized and deployed. *See Perpich v. Dep't of Def.*, 496 U.S. 334, 342 (1990). As the House Report accompanying the new law explained, the National Guard was "never designed to be a militia of the United States"; thus, the President could not call up the National Guard at his pleasure but only in specific enumerated "contingencies."[2] The House Report emphasized that "[i]t was the hereditary fear of standing armies, as a menace to liberty in time of peace, which led the framers of the Constitution to provide that the militia should always remain a militia of the States."[3]

## B.    Presidents Have Carefully Avoided Domestic Deployment of Militia Unless Absolutely Necessary

Since 1792, the President has used militia in domestic law enforcement only as "a last resort," when a state requested help to quell an insurrection, when

---

[2] Frederick Bernays Wiener, *The Militia Clause of the Constitution*, 54 Harv. L. Rev. 181, 195 n.74 (1940) (quoting H.R. Rep. No. 1094, 57th Cong., 1st Sess., at 22-23 (1902)).

[3] *Id.*

4

necessary to enforce a federal court order, or when state and local law enforcement are unable to enforce the law.[4] Thus, the militia or National Guard was called to respond to armed uprisings like the Whiskey Rebellion in 1794, the refusal to comply with desegregation orders in Little Rock in 1957, and the Los Angeles riots in 1992. Yet even when Presidents have deployed the National Guard, they have acknowledged the inherent limits of the Guard's authority, stressing that National Guard personnel are not "used to relieve local and state authorities of their primary duty to preserve the peace and order of the community" (as President Eisenhower put it in 1957), but may be used, for example, to supplement state resources in preventing unrest "at the request of the Governor and the Mayor" (as President Bush explained in 1992).[5]

Defendants-Appellants federalized and deployed National Guard members in Oregon relying on 10 U.S.C. § 12406, a rarely invoked law that allows federal activation of the Guard only in response to an "invasion," "rebellion," or the President's inability to execute federal laws. Indeed, in the over 100 years since this

---

[4] Mary C. Lawton, Memorandum from Antonin Scalia to the Deputy Att'y Gen. Re: L. Relating to Civ. Disturbances (Jan. 6, 1975),    https://perma.cc/B628-5ANM.

[5] President Dwight D. Eisenhower, *Radio and Television Address to the American People on the Situation in Little Rock*, The American Presidency Project (Sept. 24, 1957), https://tinyurl.com/yzer647h; President George Bush, *Address to the Nation on the Civil Disturbances in Los Angeles, California*, The American Presidency Project  (May 1, 1992), https://tinyurl.com/55mx5ch3.

authority was codified, it has been invoked only twice before the current Administration: in 1970 in response to a crippling mail strike and in 1916 to repel an invasion by Mexican forces.[6]

President Trump's invocation of Section 12406 to deploy armed National Guard soldiers and entangle them in protests that local law enforcement can manage—over the objection of Oregon's Governor—is unprecedented in our history. In fact, when debating the Constitution, Alexander Hamilton thought it "preposterous" that militia would ever be forcibly deployed to another jurisdiction to impose a President's will. *The Federalist No. 29* (Alexander Hamilton) (rejecting the "exaggerated and improbable suggestions" that federally controlled militia "of Virginia are to be dragged from their homes five or six hundred miles, to tame the republican contumacy of Massachusetts").

Defendants-Appellants' actions thus run contrary to our nation's unbroken tradition of restraint in using the armed forces to conduct law enforcement. They undermine the historical and constitutionally enshrined balance between state and local authority and threaten the civil liberties of all Americans. While our leaders have long recognized that the armed forces might sometimes be necessary to respond

---

[6] *See* Exec. Order No. 11519, 35 Fed. Reg. 5001, 5003 (Mar. 24, 1970); Alexander F. Barnes, *On the Border: The National Guard mobilizes for war in 1916*, U.S. Army (Feb. 26, 2016), https://www.army.mil/article/162413/on_the_border_the_national _guard_mobilizes_for_war_in_1916.

6

to genuine emergencies, soldiers have been deployed only as a last resort and always with an eye toward respecting the primacy of civil law enforcement and state control of the militias.

## C.   Deployment of the National Guard Infringes on the Sovereignty and Police Powers Reserved to States

The Constitution establishes a federal government of limited, enumerated powers, and general police power is not among them. Rather, it is States that enjoy "great latitude under their police powers to legislate as 'to the protection of the lives, limbs, health, comfort, and quiet of all persons.'" *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 756 (1985) (citation omitted). As the Supreme Court recently explained, the "ability to protect the people, property, and economic activity within its borders" is a "fundamental aspect of a State's sovereign power." *New York v. New Jersey*, 598 U.S. 218, 225 (2023).

Accordingly, Defendants-Appellants' deployment of federalized National Guard soldiers infringes on Oregon's sovereignty and its ability to enforce state laws. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982) (explaining that States have a sovereign interest in "the exercise of sovereign power over individuals and entities within the relevant jurisdiction" and that "this involves the power to create and enforce a legal code, both civil and criminal").

As the States' experience confirms, respecting local control of law enforcement makes policing more effective and safer for all involved. "Local

7

agencies are responsive to their local communities in a way that federal agencies," and certainly federalized soldiers, "are not."[7] State and local law enforcement are more familiar with the laws they are enforcing. Their training and practices, such as rules of engagement and policies on use of force, are often tailored to local needs. Local police officers have built relationships with community members, understand relevant interests, and have greater knowledge of the geography, conditions, and people. For these reasons, "local agencies are better equipped than the federal government to handle local policing."[8]

Moreover, federalized National Guard units are not a good fit for law enforcement missions. National Guard members do not receive the same training as state and local law enforcement. Instead, National Guard basic training is geared toward preparing a fighting force. *See* Army National Guard, *Basic Training Phases*, https://tinyurl.com/23n4kveh (last visited Oct. 8, 2025) (basic training for Army National Guard); U.S. Air Force, *Basic Military Training*, https://tinyurl.com/4wy75u4z (last visited Oct. 8, 2025) (basic training common to active-duty U.S. Air Force and Air National Guard). Indeed, the National Guard, when under federal control, is directly answerable to the Department of Defense, which Secretary

---

[7] Police Exec. Res. Forum, *MPD Leaders Should Remain in Charge of Their Police Department* (Aug. 16, 2025), https://tinyurl.com/3wn4f4z9.

[8] *Id.*

Hegseth recently characterized as focusing on "[m]aximum lethality, not tepid legality; violent effect, not politically correct."[9]

It is therefore unsurprising that the deployment of federalized soldiers escalates community tensions and harms state economies.[10] Putting federalized troops on city streets can sow chaos and fear, and risks unrest rather than fostering calm. And tourists, consumers, workers, and businesses are all chilled when the military patrols our communities. The Constitution and governing law protects Oregon, and indeed all States, from these injuries that result when "lethal" soldiers are sent into American communities.

In sum, President Trump has deployed the National Guard as domestic law enforcement *four times* in as many months—in California, the District of Columbia, Illinois, and Oregon. Unless Defendants-Appellants are checked by the rule of law, these likely will not be the last jurisdictions subjected to unlawful federalized deployments.[11] The States accordingly urge this Court to deny

---

[9] U.S. Dep't of Def., *Trump Renames DOD to Department of War* (Sept. 5, 2025), https://tinyurl.com/ymy9w5zw.

[10] *See, e.g.*, The Examination of Doctor Benjamin Franklin, before an August Assembly, relating to the the Repeal of the Stamp Act, &c., *Examination before the Committee of the Whole of the House of Commons, 13 February 1766* (Feb. 13, 1766), https://tinyurl.com/577emuzh. ("Suppose a military force sent into America . . . They will not find a rebellion; they may indeed make one.").

[11] In an address to the nation's Generals and Flag Officers on September 30, 2025, President Trump stated, with respect to the use of the National Guard, that cities that "are run by the radical left Democrats . . . they're very unsafe places and we're going to straighten them out one by one." *Speech: Donald Trump Addresses*

Defendants-Appellants' motion, and thereby protect the sovereignty of the States and the civil liberties of all Americans.

## IV.    CONCLUSION

This Court should deny Defendants-Appellants' request for a Stay.

DATED this 8th day of October 2025.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland


MICHAEL DREZNER
ADAM KIRSCHNER
JAMES C. LUH
VIRGINIA A. WILLIAMSON
Assistant Attorneys General
200 Saint Paul Place
Baltimore, MD 21202
410-576-6959
MDrezner@oag.state.md.us
AKirschner@oag.state.md.us
JLuh@oag.state.md.us
VWilliamson@oag.state.md.us



KRISTIN K. MAYES
Attorney General of Arizona
2005 N. Central Ave.
Phoenix, AZ 85004

NICHOLAS W. BROWN
Attorney General of Washington

*s/ Patricio Marquez*
PATRICIO MARQUEZ
EMILY NELSON
ANDREW HUGHES
ALEXIA DIORIO
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
Patricio.Marquez@atg.wa.gov
Emily.Nelson@atg.wa.gov
Andrew.Hughes@atg.wa.gov
Alexia.Diorio@atg.wa.gov



PHILIP J. WEISER
Attorney General, State of Colorado
Office of the Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203

---

*Military Leadership in Quantico, Virginia* - September 30, 2025, Roll Call (Sept. 30, 2025), https://rollcall.com/factbase/trump/transcript/donald-trump-speech-department-of-defense-leaders-quantico-september-30-2025/.

WILLIAM TONG
Attorney General
State of Connecticut
165 Capitol Avenue
Hartford, CT 06106

BRIAN L. SCHWALB
Attorney General
District of Columbia
400 6th Street NW
Washington, DC 20001

ROSE GIBSON
Assistant Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
Attorney General
State of Hawaiʻi
Department of the Attorney General
425 Queen Street
Honolulu, HI 96813

JUSTIN WHITTEN
Attorney for Governor Kelly
Office of the Governor of Kansas
300 SW 10th Ave., Suite 541-E
Topeka, KS 66612

S. TRAVIS MAYO
Attorney for Governor Andy Beshear
Office of the Governor of Kentucky
501 High Street
Frankfort, KY 40601

KWAME RAOUL
Attorney General of Illinois
115 S. LaSalle St.
Chicago, IL 60603

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

AARON M. FREY
Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006

DANA NESSEL
Michigan Attorney General
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
Attorney General
State of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr.
Blvd.
St. Paul, MN 55155

JEFF JACKSON
Attorney General of North Carolina
PO Box 629
Raleigh, NC 27602

AARON D. FORD
Attorney General
State of Nevada
100 North Carson Street

MATTHEW J. PLATKIN
Attorney General
State of New Jersey
25 Market Street

11

Carson City, NV 89701

RAÚL TORREZ
Attorney General
State of New Mexico
NM Department of Justice
408 Galisteo Street
Santa Fe, NM 87501

JOSH SHAPIRO
Governor of the Commonwealth of
Pennsylvania
508 Main Capitol Building
Harrisburg, PA 17120

CHARITY R. CLARK
Vermont Attorney General
109 State Street
Montpelier, VT 05609

Trenton, NJ 08625

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, NY 10005

PETER F. NERONHA
Attorney General
State of Rhode Island
150 South Main Street
Providence, RI 02903

JOSHUA L. KAUL
Attorney General of Wisconsin
17 W. Main Street
Madison, WI 53703

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rule of Appellate Procedure 29(a)(5), because it is 2,229 words, less than half of the length of a principal brief authorized by Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 32-2-(b). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(4)-(6) because it was prepared in 8 1/2 by 11 inch paper, double-spaced, at least one inch margins on all four sides, headings and footnotes single-spaced, quotations more than two lines are indented, and 14-point Times New Roman font, a proportionally spaced typeface.

DATED this 8th day of October 2025.

*s/ Patricio Marquez*
PATRICIO MARQUEZ

## CERTIFICATE OF SERVICE

I certify that on October 8, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. I further certify that all participants in this case are registered ACMS users and service will be accomplished by the appellate system.

DATED this 8th day of October 2025.

*s/ Patricio Marquez*_____
PATRICIO MARQUEZ