

**U.S. Department of Justice**

Civil Division, Appellate Staff
950 Pennsylvania Ave. NW
Washington, DC 20530

Tel: (202) 353-7203

October 27, 2025

**Via CM/ECF**

Molly C. Dwyer, Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 Seventh Street
San Francisco, CA 94103

　　　RE:　*State of Oregon, et al. v. Donald J. Trump, et al.*, No. 25-6268

Dear Ms. Dwyer:

　　　The federal defendants-appellants respond to plaintiffs' October 23, 2025 letter purporting "to alert the Court of a material factual error by defendants on which the panel relied to grant a stay pending appeal." Plaintiffs argue that "central" to the majority's ruling was its acceptance of an official's declaration explaining that Federal Protective Services (FPS) had deployed 115 officers from elsewhere to respond to the violent protests in Portland. Plaintiffs contend that the federal defendants, in arguing that this diversion of resources was unsustainable and in stating that despite some officers' return to their original duty stations "many" deployed FPS officers remained in Portland, misled the Court into thinking that all or most of those 115 officers were deployed to Portland at the same time and throughout the entirety of the relevant period.

　　　But defendants never contended that all FPS officers were deployed at the same time or remained in Portland throughout the relevant period, as plaintiffs' own letter acknowledges. Nor did defendants' counsel represent otherwise at oral argument. Although defendants regret any unintended ambiguity about the number of deployed FPS officers at any given time, there is no basis for concluding that any such ambiguity was the basis for the majority's decision.

　　　Defendants do wish to correct a factual discrepancy discovered in the course of responding to plaintiffs' letter. The Cantu declaration, in describing the number of FPS officers deployed in connection with the sustained violence

associated with the protests in Portland, states that FPS Region 10 has been required to deploy "officers from the other FPS Regions" and that "[t]o date, 115 FPS officers have had to deploy to Portland to maintain a 24/7 operational tempo." We are informed by our clients that this 115 figure was the number of deployments and that some individuals were deployed multiple times. Based on DHS's review of the deployment data, the number of individual FPS officers deployed during the time period appears to be 86 officers.

Relatedly, we stated in our supplemental brief that "it is undisputed that nearly a quarter of the agency's entire FPS capacity had to be redirected over a relatively short period to a single location in one medium-sized American city due to the unrest there." ECF No. 69.1 at 30. This statement was incorrect. The statement was intended to reference the percentage of inspectors who had been deployed to Portland during the relevant period, since inspectors are the FPS personnel whose primary mission is to patrol and respond to law enforcement incidents at federal buildings. But in addition to relying on the 115 figure—which as noted above, actually consisted of 86 unique individuals—some of the 86 deployed FPS officials the Cantu declaration intended to encompass are not inspectors. Based on the agency's records, it appears that 65 of the 86 individuals deployed to Portland were inspectors. The statement should be corrected to reflect that approximately 13.1 percent of the agency's inspectors had to be redirected to Portland during the period discussed by the Cantu declaration.

Defendants' declarations explain in detail why the surge of FPS personnel in response to violence and unrest is unsustainable. But defendants take with the utmost seriousness their obligation to provide the Court with accurate and up-to-date information, and we deeply regret these errors.

Sincerely,

*/s/ Andrew M. Bernie*
Andrew M. Bernie

cc:     All counsel (via CM/ECF)

2